UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIA HOWARD,

                      Plaintiff,                    DECISION AND ORDER

     -v-

                                                 11-CV-6100 CJS

CANNON INDUSTRIES, INC.,

                      Defendant.
_____

APPEARANCES

For Plaintiff:                Christina A. Agola, Esq.
                              Christina Agola PLLC
                              1415 Monroe Avenue
                              Rochester, New York 14618

For Defendant:            Margaret A. Clemens, Esq.
                              Littler Mendelson, P.C.
                              400 Linden Oaks, Suite 110
                              Rochester, New York 14625

INTRODUCTION

This is an action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e *et seq*., and the New York State Human Rights Law ("NYSHRL"), Executive Law § 296.  Now before the Court is Defendant's Motion for Summary Judgment (Docket No. [#15]).  The application is denied.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to Plaintiff.  Defendant Cannon Industries, Inc. ("Cannon Industries") is a metal

manufacturing company in Rochester, New York.[1]  Defendant Jack Cannon ("Cannon") has been the Chief Executive Officer ("CEO") of Cannon Industries for twenty-five years, and is also the sole shareholder. Cannon's son, Reggie Cannon, is President of Cannon Industries.

In 2007, Cannon Industries hired Plaintiff as a part-time customer service employee, at a rate of $10 per hour.  In early 2008, Cannon hired Plaintiff as his Senior Executive Administrative Assistant, at a rate of $14 per hour.  In December 2008, Cannon increased Plaintiff's pay to an annual salary of $36,500.00.  In her position as Cannon's administrative assistant, Plaintiff was never the subject of any written negative performance review or disciplinary action.  On or about May 22, 2009, Cannon removed Plaintiff as his administrative assistant, and transferred her to a position in customer service, with the same pay and benefits.

On or about May 26, 2009, Plaintiff filed a sex discrimination complaint with the New York State Division of Human Rights ("NYSDHR"), in which she alleged that she was "getting blamed for problems [and] yelled at daily," because she had refused to have sex with Cannon. Clemens Decl. Ex A.  In that regard, she stated that in March 2008, Cannon told her that he "wanted to make love to her."  She further alleged that Cannon "continuously made comments about sex," and had "tapped [her] on [her] butt and tried to kiss [her] more than once." *Id*.

---

[1]Without explaining the relevance or proper purpose of pointing out such fact in a sex-discrimination case, of which there appears to be absolutely none, Defendant repeatedly mentions that Cannon Industries is a "minority-owned business." *See, e.g.*, Cannon Decl. ¶ 2; Def. Rule 56.1 Stmt. ¶ 2; Leadbeter Decl. ¶ 7; Def. Memo of Law at p. 1.

On February 28, 2011, Plaintiff commenced this action, asserting claims for hostile environment discrimination and retaliation, based on Cannon's "requests for sex," "inappropriate touching of the Plaintiff on her posterior," and "his myriad[2] attempts" to kiss her.

Generally, Plaintiff's version of events is that in or about March 2008, Cannon invited her to meet with him at a hotel bar, ostensibly to discuss upcoming trade shows and her job responsibilities regarding those shows. Plaintiff maintains that, during the meeting, Cannon told her, "I want to make love to you." Plaintiff politely stated that she was not interested in that, and Cannon reportedly responded, "I'll break you down." Plaintiff indicates that subsequently, while she and another employee were on a business trip with Cannon, she was retrieving her phone from Cannon's hotel room, where it was being charged, and he asked her if she was "sure" she wanted to leave his room. Plaintiff interpreted the question as a sexual advance, which she declined.

Plaintiff also alleges that Cannon acted inappropriately toward her at the office, by attempting to kiss her, and by touching or "tapping" her "butt." She also maintains that Cannon made remarks about her appearance, and told her that she should dress more like certain other female employees at Cannon Industries. Plaintiff contends that in the Spring of 2009, Cannon became increasingly critical of her job performance, which she attributed to him being upset at her for declining his sexual advances.

As a result, on May 19, 2009, Plaintiff complained to Cannon Industries' Human Resources Officer, Cheryl Leadbeter, about Cannon's behavior. That same day she sent an

---

[2]Whereas Plaintiff had previously alleged only that Cannon attempted to kiss her more than once, she now alleged that he had tried to kiss her many times. According to the Cambridge online dictionary, a "myriad" is "a very large number of something." See, http://dictionary.cambridge.org/dictionary/british/myriad

3

email to Cannon, indicating that she believed he was mistreating her because she refused to have sex with him. Still later that day, Cannon, who was leaving for a two-day business trip, told Plaintiff that he and she were not getting along, and that he wanted to transfer her to a customer service position, and that she needed to tell him whether she would agree to that when he returned from his trip.[3] On May 22, 2009, Plaintiff confronted Cannon in his office, and secretly tape recorded the conversation, though large parts of the tape are inaudible. Subsequent to that conversation, Plaintiff again complained to Leadbeter, after which Leadbeter and Cannon transferred Plaintiff to a customer service position, having the same pay and benefits, where she would have little or no contact with Cannon.

Plaintiff denies that she ever asked Leadbeter to transfer her to another position, but it is abundantly clear, from the transcript of the taped conversation, that Plaintiff was willing to be transferred to a sales position within the company, where she would not have to interact with Cannon. *See, e.g.*, Pl. Appx. Vol. 1 at pp. 12, 14, 17-18. Plaintiff nevertheless alleges that the transfer was retaliatory, because the new position provided fewer chances for promotion and raises. She also contends that after the transfer, she was unfairly reprimanded on a few occasions, and excluded from some staff events.

Plaintiff was deposed as part of pretrial discovery in this action. At deposition, Plaintiff's recollection was vague on a number of points. For example, Plaintiff stated that, apart from the two alleged sexual advances, she could not recall any specific harassing comments that Cannon made to her. Pl. Dep. at 26, 29-30. Plaintiff indicated that Cannon

---

[3]Cannon seems to maintain that he actually told Plaintiff about the transfer prior to her complaining to Leadbeter and prior to her sending him the aforementioned email, suggesting that the impending transfer was what motivated Plaintiff to file a false harassment claim against him.

harassed her at the office "once a day," and when asked to explain, stated: "If I would go in his office to give him something, if he was sitting at his – the front table, sometimes he would tap my butt when I would go to leave. Sometimes he would make comments about the way my clothes fit on me." *Id*. at 32. Plaintiff further testified that Cannon tried to kiss her "once or twice," though she could not remember when. *Id*. at 102. As for the alleged comments about her clothes, she could not specifically recall any such comment. *Id*. at 32-33. Later in her testimony, Plaintiff stated: "Every day he would either make a comment about my clothes or tap me on my butt[.]" *Id*. at 33. Plaintiff stated that despite the alleged harassment, she and Cannon got along well, until shortly prior to May 2009, when Cannon began getting irritated with her, and complaining about problems that were not her fault. *Id*. at 34-37. Plaintiff indicated, though, that she could not recall any of the problems about which Cannon yelled at her. *Id*. at 99. Plaintiff stated that when she confronted Cannon on May 22, 2009, he admitted saying that he wanted to make love to her and "tapping" her on the but "once or twice," but generally denied her accusations, and accused her of "coming on to him first." *Id*. at 46-47. Plaintiff testified that after she was transferred to customer service, she was "written up" for infractions, such as talking on her cell phone, on a handful of occasions. *Id*. at 48-51, 74-75. She also testified that after being transferred she had not received a pay raise in two years. *Id*. at 52-53. Finally, Plaintiff testified that during the year she worked as Cannon's assistant, she was never reprimanded for the type of infractions for which she was written up in customer service. *Id*. at 109, 112.

Cannon offers a much different version of events. Cannon denied ever telling Plaintiff that he wanted to make love with her, or asking her if she wanted to stay in his hotel room.

5

Cannon Dep. at p. 39. Cannon also denied that he ever made comments or compliments to Plaintiff about her body, or that he ever touched her in a sexual manner. Cannon Dep. at pp. 56, 80-81. In addition, Cannon denied that Plaintiff complained to him about harassment or inappropriate comments. Cannon Dep. at p. 62. Cannon testified that Plaintiff's job performance was deficient, and that he had decided to transfer her to another position prior to the incidents in May 2009. Specifically, he stated that in late 2008, Cannon Industries was in the process of updating the company's job descriptions, and that as part of that process, in March 2009, Plaintiff gave him a written explanation for why she believed that he was preventing her from performing certain duties listed in her job description. For example, she indicated that although she was supposed to be able to schedule Cannon's appointments, he often overrode her scheduling decisions. Cannon testified that he perceived Plaintiff's comments in this regard as being disrespectful toward him, and as evincing her inability or unwillingness to do the job. Cannon Dep. at pp. 49-50. Cannon stated that he directed Leadbetter to find someone to replace Plaintiff as his administrative assistant, and that Leadbetter had begun to interview candidates for the position prior to May 22, 2009. Cannon Dep. at pp. 50-53. He further indicated that Plaintiff only accused him of harassment after he advised her that he was going to transfer her back to a customer service position, as a result of her poor performance. Cannon Dep. at pp. 63-65.

Cannon further testified that on May 19, 2009, as he was preparing to leave on a business trip, he told Plaintiff that he intended to transfer her to a customer service position, and that when he returned from the trip, he wanted her to tell him whether she would agree to such a transfer. Cannon Dep. at pp. 63, 75. Later that day, after Cannon had left on his

6

business trip, Plaintiff sent an email to his Blackberry, in which she referred to "disagreements" that they had been having "over the past few months." Clemens Decl., Ex. E. The email further indicated that Plaintiff believed that Cannon had developed an "irritable" attitude toward her because she had refused his sexual advance, and because he had realized that he could not control her. *Id*. Cannon stated that he did not receive Plaintiff's email until the following day, whereupon he notified Leadbetter that he had received an inappropriate message from Plaintiff. Cannon Dep. at p. 64. Cannon testified that on May 22, 2009, he returned to the office and spoke to Plaintiff about her email, and told her that she still needed to make a decision about being transferred to a customer service position, and she responded by "yelling and screaming" at him in a belligerent manner, after which he directed Leadbetter to transfer Plaintiff to a customer service position. Cannon Dep. at pp. 66-69, 73-75.

Following the completion of pretrial discovery, Defendants filed the subject motion for summary judgment. Defendants maintain that Plaintiff cannot establish a prima facie case for any of her claims. With regard to Plaintiff's hostile work environment claim, Defendants contend that she cannot prove that the alleged harassment by Cannon was sufficiently severe or pervasive. On this point, Defendants argue that, at most, Plaintiff has shown that Cannon propositioned her twice, "tapped her on the butt" once or twice, and tried to kiss her once or twice. Defendants assert that those are sporadic, isolated incidents, which, as a matter of law, are not sufficiently severe or pervasive to establish a hostile environment. In addition, Defendants argue that liability for the alleged hostile environment cannot be imputed to Cannon Industries, since the harassment did not result in a tangible employment action.

7

Defendants further maintain that Plaintiff cannot maintain her claims against Cannon in his individual capacity, since individuals are not liable under Title VII, and since she cannot establish a hostile environment claim against him as an "aider and abettor" under the NYSHRL, for the same reasons mentioned above. Lastly, Defendants contend that Plaintiff cannot establish a prima facie retaliation claim, since she did not suffer a sufficiently adverse retaliatory action.[4] On this point, they argue that after Plaintiff complained about Cannon, she was merely transferred to another position with the same pay and benefits, which is what she requested.

Plaintiff opposes the motion entirely. Plaintiff maintains that the alleged harassment was sufficiently severe or pervasive to establish a prima facie case, and that there is basis to impute liability to Cannon Industries. As for her retaliation claim, Plaintiff maintains that her transfer was retaliatory, because it was unwanted by her, and because the new position involved more work and less opportunity for advancement and pay raises than her former position.

On September 27, 2012, counsel for the parties appeared before the undersigned for oral argument of the motion.

---

[4]In their reply brief, Defendants raise a new argument for the first time, which is that even if Plaintiff can establish a prima facie case of retaliation, they had a legitimate non-retaliatory reason for transferring her. However, the Court need not consider arguments raised for the first time in a reply brief. *See, e.g., In re Dobbs*, 227 Fed.Appx. 63, 64 (2d Cir. Jun. 29, 2007) ("[W]e think that it was entirely proper for the District Court to decline to consider debtor-appellant's argument, raised for the first time in its reply brief[.]") Here, because Plaintiff did not have notice that Defendants would make this argument, the Court declines to consider it as part of the pending motion. *See*, Pl. Memo of Law at p. 25 ("The only element of the prima facie case with regards to Plaintiff's retaliation claim that is disputed is whether [she] suffered an adverse action.")

DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence

9

of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

"[I]t is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) (citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) (citations omitted).

*Title VII*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006). "Title VII is not a general civility code for the American workplace; it prohibits only harassment that is discriminatory." *Marshall v. NYC Bd. of Elections*, No. 07-4561-cv, 322 Fed.Appx. 17, 2009 WL 928083 at *19 (2d Cir. Apr. 7, 2009) (citation and internal quotation marks omitted).

### *There are issues of fact as to whether the harassment was severe or pervasive*

Defendants deny that Cannon committed the acts alleged by Plaintiff, but they maintain that even if he did, the conduct was not sufficiently severe or pervasive to establish a prima facie case. The Court disagrees. The legal standards for a hostile environment claim are well settled:

> In order to establish a hostile work environment claim ... a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive. The plaintiff must show more than a few isolated incidents . . . , although a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe.

*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723–724 (2d Cir. 2010) (citations and internal quotation marks omitted); *see also, Fitzgerald v. Henderson*, 251 F.3d 345, 360 (2d Cir. 2001) ("If a rational juror could infer that a reasonable employee would have viewed a given series of events as materially worsening her working conditions, summary judgment dismissing her hostile work environment claim on the ground of lack of an adverse employment decision is inappropriate."). In this regard, the Court must not "view individual incidents in isolation," or "view the record in piecemeal fashion," but instead, should consider the "totality of the circumstances, viewed from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances including the social context in which particular behavior occurs and is experienced by its target.'" *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (citations and internal quotation marks omitted).

Of course, "[t]he kinds of workplace conduct that may be actionable under Title VII include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Redd v. New York Div. of Parole*, 678 F.3d at 175 (citations and internal quotation marks omitted). However, harassment that is not overtly sexual in nature may also be actionable, if it is motivated by the Plaintiff's gender:

> It is axiomatic that to prevail on a claim of hostile work environment based on gender discrimination, the plaintiff must establish that the abuse was based on her gender. The harassing conduct need not be motivated by sexual desire, however, so long as it was motivated by gender. Further, facially neutral incidents may be included among the "totality of the circumstances" that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory. Circumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that the same individual engaged in multiple acts of harassment, some overtly sexual and some not. In *Raniola* [*v. Bratton*, 243 F.3d 610 (2d Cir. 2001)], for example, we concluded that, given proof of instances of overt gender hostility by the supervisor of the female plaintiff, a rational juror could permissibly infer that his entire alleged pattern of harassment against her was motivated by her gender, even though some of the harassment was not facially sex-based. Thus, the relevant circumstances in *Raniola* included not only offensive sex-based remarks, but also, *inter alia*, one dire facially gender-neutral threat of physical harm by the supervisor who had made those remarks. In <u>Fitzgerald v. Henderson, 251 F.3d 345 (2d Cir.2001), cert. denied, 536 U.S. 922, 122 S.Ct. 2586, 153 L.Ed.2d 776 (2002), we held that a claim of gender-based hostile work environment (as well as an "embedded" claim of retaliation) may be premised on evidence that a supervisor heaped abuse on the plaintiff because she had rejected his sexual advances. See 251 F.3d at 361[.]</u> So long as there is some evidentiary basis for inferring that facially sex-neutral incidents were motivated by the plaintiff's gender, the ultimate question of whether such abuse was "because of" the plaintiff's gender . . . is a question of fact for the factfinder.

> In sum, the question of whether considerations of the plaintiff's sex caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, and an invidious discriminatory purpose may often be inferred from the totality of the relevant facts. Thus, especially in the context of a claim of sexual harassment, where state of mind and intent are at issue, the court should not view the record in piecemeal fashion, and summary judgment should be used sparingly.

*Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547-548 (2d Cir. 2010) (emphasis added, citations and internal quotation marks omitted).

Here, Plaintiff maintains that over a one-year period, Cannon propositioned her twice to have sex with him, grabbed her face and tried to kiss her "once or twice," touched her butt several times, and, because he was frustrated by her rejection, began to unfairly criticize her work and blame her for matters that were outside of her control. These contentions raise a triable issue of fact as to whether Cannon's alleged harassment was sufficiently severe or pervasive.

Defendants argue, though, that the Second Circuit has deemed similar conduct to be insufficiently severe or pervasive, and in that regard, they cite cases such as *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) and *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998). However, those cases did not involve the level of intimate touching alleged here. For instance, in *Alfano*, none of the alleged harassment involved intimate touching, or, for that matter, physical contact of any kind. *See, Alfano*, 294 F.3d at 378-379. Moreover, in *Quinn*, the plaintiff's supervisor made a single offensive sexual comment, and only once

touched her breasts with some papers that he was holding. *Quinn*, 159 F.3d at 768.[5] Furthermore, the Second Circuit recently indicated that it was error for a district court to grant summary judgment on a hostile work environment claim, where the female plaintiff's female supervisor touched her breasts on three occasions over a five-month period. *See, Redd v. New York Div. of Parole*, 678 F.3d at 166. In that regard, the Circuit Court emphasized the severe nature of harassment involving touching of an employee's intimate body parts. *See, id.* at 177 ("[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment.") (citation omitted); *id*. at 179 ("The repeated touching of intimate parts of an unconsenting employee's body is by its nature severely intrusive and cannot properly be characterized as abuse that is 'minor.' . . . When entering a workplace, reasonable people expect to have their autonomy circumscribed in a number of ways; but giving up control over who can touch their bod[ies] is usually not one of them.") (citations omitted). In the instant case, in addition to the alleged requests for sex, Cannon supposedly pulled Plaintiff's face toward him while trying to kiss her, and touched her butt several times. The Court declines to hold, as a matter of law, that such touching is insufficiently severe to establish a prima facie case.

### *Defendant is not entitled to summary judgment under Faragher/Ellerth*

Cannon Industries maintains that it is entitled to summary judgment under the *Faragher/Ellerth* defense, since Plaintiff did not suffer a tangible adverse employment action. The Court disagrees. It is well-settled that acts of discrimination that are committed by a person who is the defendant-employer's proxy are automatically imputed to the employer.

---

[5]The plaintiff in *Quinn* actually alleged additional conduct, but it was excluded as untimely.

Moreover, it is clear that a company CEO is of sufficient rank to qualify as a proxy. *See, Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 54 (2d Cir. 2012) ("Courts of Appeals have considered supervisors to be of sufficiently high rank to qualify as an employer's proxy or alter ego when the supervisor is a president, owner, proprietor, partner, corporate officer, or otherwise highly-positioned in the management hierarchy.") (citations and internal quotation marks omitted). In *Townsend*, the Second Circuit clarified that the *Faragher/Ellerth* defense cannot be raised where the alleged harasser is sufficiently high in the company hierarchy to be the company's proxy. On this point, the Circuit Panel explained that the *Faragher/Ellerth* defense may be available where the defendant company is facing vicarious liability for a lower-ranking employee's acts, but not where proxy/alter ego liability applies. *See, Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d at 52 ("Every Court of Appeals to have considered this issue has held that the *Faragher/Ellerth* affirmative defense is <u>unavailable</u> when the supervisor in question is the employer's proxy or alter ego.") (emphasis added); *see also, id*. ("*Ellerth* instead derived the appropriate standard for <u>non-proxy</u> employer liability[.]") (emphasis added). Therefore, where discrimination is perpetrated by a company proxy, it is imputed to the employer, even where the discrimination did not result in an adverse employment action. *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d at 53. In this case, Cannon is Cannon Industries' CEO and owner, and therefore clearly qualifies as the company's proxy. Accordingly, Cannon Industries has not shown that it is entitled to judgment as a matter of law based on *Faragher/Ellerth*.

### *There is an issue of fact as to whether Plaintiff experienced retaliation*

Defendants contend that Plaintiff cannot demonstrate a prima facie retaliation claim, since she did not suffer any adverse, retaliatory consequences after she complained about Cannon's harassment. However, the Court disagrees. The legal principles applicable to retaliation claims under Title VII are clear:

> "Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case of retaliation by showing: " '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.' " *Jute*, 420 F.3d at 173 (*quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir.2001)). The plaintiff's burden in this regard is "*de minimis*," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id*. (internal quotation marks omitted).
>
> If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Id*. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id*. If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id*. A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164-165 (2d Cir. 2010). To make a prima facie showing of an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d at 207 (*quoting Burlington N.*

& Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)). In that regard, reassignment to a less-prestigious job may be sufficiently adverse, even without a change in pay or title:

> To be sure, reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. But here, the jury had before it considerable evidence that the track laborer duties were by all accounts more arduous and dirtier; that the forklift operator position required more qualifications, which is an indication of prestige; and that the forklift operator position was objectively considered a better job[.]

*Burlington Northern*, 126 S.Ct. at 2417 (citations and internal quotation marks omitted).

Here, Defendants maintain that after Plaintiff complained about Cannon's alleged harassment, she was merely transferred to a different position with a new supervisor, without any loss of pay or benefits, which is what she requested. However, in addition to denying that she requested the transfer, Plaintiff contends that the transfer was in effect a demotion. On that point, as compared to her position as Executive Administrative Assistant to the CEO, Plaintiff's new position as a general customer service representative could certainly be viewed as having less prestige. Moreover, Plaintiff contends that the customer service assignment involved more work and no opportunity to advance. She also maintains that after her transfer, she was given several spurious disciplinary warnings. On these facts, the Court finds that Plaintiff has met her burden of making a prima facie showing that she experienced an adverse retaliatory act, and that Defendant is not entitled to judgment as a matter of law.

CONCLUSION

Accordingly, Defendant's application for summary judgment [#15] is denied.

SO ORDERED.

Dated: October 29, 2012
Rochester, New York

ENTER:

 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Jusdge